IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MELVIN FISHER,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN FRED E. FIGUEROA (CCA), *et al.*,<br><br>Defendants. | ) | Case No. CIV-12-231-F |

**REPORT AND RECOMMENDATION**

Mr. Melvin Fisher sues under 42 U.S.C. § 1983, claiming that prison authorities created a dangerous racial environment and failed to supply protection during a race riot.[1] Defendants Figueroa, Johnson, and Lee filed a motion to dismiss on grounds involving nonexhaustion of administrative remedies,[2] and the Court converted the motion to one for summary judgment.[3] With this conversion of the motion, the Court must determine whether a genuine issue of material fact exists on the exhaustion defense.

For the claims involving development of a racial imbalance, no triable issue of fact exists because the Plaintiff has not presented evidence of an administrative claim.

But a triable issue does exist on the claim involving inadequate protection during a riot. For this claim, the parties agree that Mr. Fisher satisfied the first step in the

---

1 *See* Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at ECF pp. 2-5 (Feb. 28, 2012).

2 *See* Defendants' Motion to Dismiss and Brief in Support at ECF pp. 3-9 (May 14, 2012).

3 Order at ECF p. 2 (July 27, 2012).

administrative process by submitting an administrative appeal to the facility grievance coordinator. The grievance coordinator sent the document to another person, who told the Plaintiff to resubmit the document just as he had earlier done. From this response, the Defendants argue that the Plaintiff could have pursued other administrative options. But, the fact-finder could reasonably infer that the administrative response was incorrect and that the Plaintiff was out of administrative options. Thus, the Defendants are not entitled to summary judgment on the claim relating to inadequate security during a riot.

## STANDARD FOR SUMMARY JUDGMENT

The Court should grant summary judgment when "there is no genuine dispute as to any material fact and [the movants are] entitled to judgment as a matter of law."[4] Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[5]

The cited evidence should be viewed "in the light most favorable to the non-moving party."[6]

---

[4] Fed. R. Civ. P. 56(a).

[5] Fed. R. Civ. P. 56(c)(1)(A)-(B).

[6] *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

Because exhaustion involves an affirmative defense,[7] the Defendants bear the burden of proof.[8] As a result, the Defendants must demonstrate the absence of a disputed material fact on the issue of exhaustion.[9] If the Defendants satisfy this burden, Mr. Fisher would incur a duty to "demonstrate with specificity the existence of a disputed material fact"[10] or "show that remedies were unavailable to him as a result of" the actions of prison officials.[11] In the absence of either showing, the Defendants would be entitled to summary judgment on the affirmative defense.[12]

NONEXHAUSTION OF ADMINISTRATIVE REMEDIES

Mr. Fisher makes three claims in the complaint. The first and third claims involve:

- creation of a racial imbalance between "Mexicans" and "African American[s]" at the North Fork Correctional Facility, setting the stage for a racial disturbance and

- exacerbation of the threat of a riot by transferring the "Northerner Mexicans" out of North Fork Correctional Facility while increasing the number of "Soreno Mexicans."[13]

---

7 *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]").

8 *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant.").

9 *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

10 *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

11 *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

12 *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

13 Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at ECF pp. 2, 5 (Feb. 28, 2012).

In his second claim, the Plaintiff alleges a failure to supply protection during a racial riot.[14]

According to the Defendants, each claim is unexhausted. The Plaintiff does not dispute the Defendants' evidence, but suggests that remedies were unavailable and argues that his correspondence to various officials should suffice.

## I. The Statutory Exhaustion Requirement

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[15] This law "requires proper exhaustion" of the prison's administrative remedies.[16]

## II. The Administrative Process

Mr. Fisher is a California inmate housed at an Oklahoma private prison, North Fork Correctional Facility. Because Mr. Fisher is a California prisoner, the administrative process is governed by Title 15 of the California Code of Regulations.[17]

---

14 Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at ECF p. 2 (Feb. 28, 2012).

15 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2006).

16 *Woodford v. Ngo,* 548 U.S. 81, 92 (2006).

17 *See* Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF pp. 2-3 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator); *see also Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009) (describing Title 15 of the California Code of Regulations as the "multi-tiered administrative scheme for inmate grievances").

When a California prisoner at North Fork wants to complain about a decision at his facility, he must begin the administrative process by filing an appeal on a "Form 602" with the facility's grievance coordinator.[18] If dissatisfied with the response, the inmate may then appeal to Mr. Figueroa, the North Fork warden.[19] If the prisoner remains dissatisfied, he can appeal to the California Department of Corrections and Rehabilitation.[20]

If the inmate complains about a prison official's misconduct, he can send the appeal to the prison's grievance coordinator or the California "Contract Beds Unit."[21] If the appeal is sent to the facility grievance coordinator, he can forward the appeal to the Contract Beds Unit "for a determination of whether it meets the criteria of a staff complaint."[22]

III. Mr. Fisher's Administrative Appeals

On the exhaustion defense, the evidence creates a triable issue of fact on the claim involving inadequate protection; but the Defendants are entitled to summary judgment on the claims involving racial imbalance.

---

18 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 4 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator); *see Brodheim v. Cry*, 584 F.3d 1262, 1265 (9th Cir. 2009).

19 *Brodheim v. Cry*, 584 F.3d 1262, 1265 (9th Cir. 2009).

20 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 5 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator); *see Brodheim v. Cry*, 584 F.3d 1262, 1265 (9th Cir. 2009).

21 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 4 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator).

22 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 4 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator).

A. The Claims Concerning Racial Imbalance at the North Fork Correctional Facility

As discussed above, the first and third claims involve creation of hostilities by fostering a racial imbalance.

For these claims, the undisputed evidence is that Mr. Fisher did not file a Form 602 appeal with the grievance coordinator.[23] Rather than point to any administrative steps, Mr. Fisher refers to a letter that he sent to the warden about the racial imbalance.[24] This reference does not suffice, for the grievance procedures are specific regarding the need to use Form 602 and the prisoner cannot bypass that form by sending letters to the warden. Thus, the Plaintiff's correspondence would not constitute "proper" exhaustion.[25]

But if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."[26] Thus, the Court must decide whether administrative remedies were still open to Mr. Fisher when he sued.

---

23 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF pp. 5, 7 (May 14, 2012) (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator).

24 Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, Attach. 1 at ECF p. 6 (Feb. 28, 2012).

25 *See Stutes v. Tipton*, No. CIV-08-207-M, 2010 WL 1372529, Westlaw op. at *4 n.7 (W.D. Okla. Feb. 23, 2010) (unpublished report and recommendation by magistrate judge) (holding that a letter written to the prison's corporate office and warden did not satisfy the exhaustion requirement), *adopted*, 2010 WL 1372525, Westlaw op. at *1 (W.D. Okla. Mar. 31, 2010) (unpublished order by district judge).

26 *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).

He stated: "[T]he grievance coordinator has been frivolously denying actions . . . and a lot of times you don't hear nothing back from him or [the California Department of Corrections and Rehabilitation]. So, I've been taking it upon myself to by pass them . . . ."[27] This allegation would not create a material fact-issue on the availability of administrative remedies.

The Plaintiff does not suggest that the grievance coordinator had failed to respond to his complaints about a racial imbalance. Even if the Plaintiff thought an appeal to the grievance coordinator would have been futile, this step would still have been available.[28] Thus, on the claims involving racial imbalance, the Plaintiff has not created a genuine issue of material fact on the availability of administrative remedies.

B. The Claim Regarding a Failure to Supply Protection

In his second claim, Mr. Fisher alleges a lack of protection during the riot.[29]

For this claim, the Defendants acknowledge the filing of an appeal with the grievance coordinator.[30] The grievance coordinator said that the complaint involved staff misconduct,

---

27 Respondent's Brief at ECF p. 5 (July 2, 2012).

28 *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (stating that futility does not constitute an exception to the exhaustion requirement in 42 U.S.C. § 1997e(a)).

29 Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at ECF p. 2 (Feb. 28, 2012).

30 Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 6 (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator), ECF pp. 25-26 (Exh. C to Barton Affidavit) (May 14, 2012).

so she sent the appeal form to the Contract Beds Unit.[31] This unit disagreed with the grievance coordinator, stating that the appeal did not involve staff misconduct, rejecting the appeal and telling Mr. Fisher to resubmit the document to the grievance coordinator within 30 days.[32]

The Plaintiff resubmitted the appeal in February 2012, but the new submission deviated from the instructions because it took more than 30 days and went to the Contract Beds Unit rather than the facility grievance coordinator.

Based on this failure to comply with the instructions, the Defendants argue that the Plaintiff did not properly exhaust administrative remedies. But if the Contract Beds Unit was correct in its reasons for rejecting the appeal, the mistake had been committed by the facility grievance coordinator – not Mr. Fisher.

Mr. Fisher never said that the appeal involved staff misconduct; that characterization had been made by the facility grievance coordinator when she sent the appeal to the Contract Beds Unit. Instead of telling the facility grievance coordinator to act on the appeal, the Contract Beds Unit directed the Plaintiff to redo what he had already done – to resubmit the appeal to the facility grievance coordinator. There is nothing in the administrative procedure

[31] Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 6 (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator), ECF p. 28 (Exh. D to Barton Affidavit) (May 14, 2012).

[32] Defendants' Motion to Dismiss and Brief in Support, Exh. 1 at ECF p. 6 (Affidavit of B. Barton, North Fork Correctional Facility Grievance Coordinator), Exh. 1(D) (Letter by R. Flowerree/T. Taber), ECF pp. 28-29 (Exh. D to Barton Affidavit) (May 14, 2012).

to require a prisoner to refile an appeal when the facility grievance coordinator mistakenly forwards the appeal to the Contract Beds Unit.

Perhaps for this reason, the Contract Beds Unit sent the Plaintiff an internally-inconsistent explanation for its rejection of the appeal. The first sentence states that the appeal "reflects a complaint against staff."[33] Then, the same person states that "[t]he appeal does not meet the requirement for assignment as a staff complaint."[34] The administrative procedure does not sanction this sort of internally-contradictory explanation for the rejection of an appeal.

In oral argument, the Defendants argue that the Plaintiff had three options: (1) He could have appealed to the second step of the administrative process; (2) he could have argued that the "cancellation" was in error; and (3) he could have resubmitted the appeal to the facility grievance coordinator (just as he had done originally).

The first two arguments are based on a misunderstanding of the administrative process. That process distinguishes between "rejection" and "cancellation" of an appeal, and each response involves its own limitations and consequences.[35]

---

33 Defendants' Motion to Dismiss and Brief in Support, Exh. 1(D) (May 14, 2012) (Memorandum from M. Lea, Chief, Contract Beds Unit).

34 Defendants' Motion to Dismiss and Brief in Support, Exh. 1(D) (May 14, 2012) (Memorandum from M. Lea, Chief, Contract Beds Unit).

35 Cal. Code Regs. tit. 15 § 3084.6 ("Rejection, Cancellation, and Withdrawal Criteria").

The Contract Beds Unit stated that it was "reject[ing]" the appeal – not "cancelling" it.[36] The Plaintiff was then told that he could not "appeal a rejected appeal."[37] Instead, the Plaintiff was told that his only option was to "take the corrective action necessary and resubmit the appeal"[38] – precisely what he had already done.

In oral argument, the Defendants were asked what administrative provision would require the inmate to resend an appeal solely because authorities disagreed between themselves about whether the complaint involved a staff complaint. In response, the Defendants relied on the administrative provisions for cancellation of an appeal in Cal. Code Regs. tit. 15 § 3084.6. But, as noted already, the Contract Beds Unit "rejected" the appeal instead of "cancelling" it. The regulations provide authorities with discretion to accept an appeal, previously rejected, when the prisoner "corrects" his error.[39] But, even under the Defendants' version of the regulation, the Plaintiff had not made any mistakes requiring "correction." The mistake was either:

- that of the facility grievance coordinator, who regarded the complaint as a staff complaint, or

---

36 Defendants' Motion to Dismiss and Brief in Support, Exh. 1(D) (May 14, 2012) (Memorandum from M. Lea, Chief, Contract Beds Unit").

37 Defendants' Motion to Dismiss and Brief in Support, Exh. 1(D) (May 14, 2012) (Letter by R. Flowerree/T. Taber, Appeals Coordinator).

38 Defendants' Motion to Dismiss and Brief in Support, Exh. 1(D) (May 14, 2012) (Letter by R. Flowerree/T. Taber, Appeals Coordinator).

39 Cal. Code Regs. tit. 15 § 3084.6(a)(2).

- that of the Contract Beds Unit, which stated that the complaint did not involve a staff complaint.

Regardless of which official had made the mistake, authorities could not refuse to act on the appeal because Mr. Fisher had followed the correct procedure. Authorities should have acted on the appeal rather than tell him to start anew because of a mistake by either the facility grievance coordinator or the Contract Beds Unit. Thus, when the Contract Beds Unit instructed Mr. Fisher to start over because of the facility grievance coordinator's unilateral decision to treat the appeal as a "staff complaint," further administrative remedies became unavailable for purposes of the Prison Litigation Reform Act.[40] As a result, the Plaintiff did not fail to exhaust administrative remedies available to him and the Court should deny summary judgment on the second claim.

IV. Summary

The Defendants are entitled to summary judgment on the first and third claims, but not the second claim.

---

[40] In discussing California's administrative procedures for inmates, the Ninth Circuit Court of Appeals stated:

> [W]e hold that improper screening of an inmate's administrative grievances renders administrative remedies "effectively unavailable" such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable.

*Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).

NOTICE OF THE RIGHT TO OBJECT

The parties can object to this report. To object, the party must file an objection with the Clerk of this Court by January 24, 2013.[41] The failure to timely object would foreclose appellate review of the suggested ruling.[42]

STATUS OF THE REFERRAL

The referral is discharged.

Entered this 7th day of January, 2013.

Robert E. Bacharach
United States Magistrate Judge

---

41 *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1) (West 2011 supp.).

42 *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).